UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2016 AUG 22  PM 1: 43

DEPUTY CLERK_____

| | | |
|---|---|---|
| SMITTY JAMES LYONS,<br>Institutional ID No. 194560, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.<br>5:15-CV-183-BQ<br>ECF |
| | ) | |
| SENIOR ARRESTING OFFICER,<br>Lubbock Police Dept., *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Proceeding *pro se*, Plaintiff Smitty James Lyons filed this action pursuant to 42 U.S.C.

§ 1983, alleging violations of his constitutional rights during his arrest by the Lubbock Police

Department and his subsequent detention at Lubbock County Detention Center.  Lyons was a

pre-trial detainee at the time he filed this action.  He seeks monetary damages in the amount of

$30 million.

Lyons filed his original Complaint on August 25, 2015, and the United States District

Court subsequently transferred this case to the undersigned United States Magistrate Judge for

further proceedings.  The undersigned reviewed Lyons's Complaint, along with its attachments,

and entered an order to complete a questionnaire pursuant to *Watson v. Ault*, 525 F.2d 886,

892–93 (5th Cir. 1976), which Lyons completed and returned.  ECF No. 25.  The court then

granted Lyons leave to file an Amended Complaint.  ECF No. 29.  The court entered an order

to complete a second questionnaire regarding his claims in the Amended Complaint, which

Lyons completed and returned.  ECF No. 32.

Lyons has not consented to proceed before the undersigned magistrate judge. In accordance with the order of transfer, the undersigned enters this report and recommendation and recommends that this action be dismissed under 28 U.S.C. §§ 1915(e)(2) and 1915A.

## I.  **Standard of Review**

A court must dismiss a complaint filed *in forma pauperis* if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2) (2016); *see also* § 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*). A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint lacking an arguable basis in fact rests upon clearly baseless factual contentions, while a complaint lacking an arguable basis in law rests upon indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). In reaching a frivolous determination, the court may consider reliable evidence such as the plaintiff's allegations, answers obtained through a questionnaire, and authenticated prison records. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that a court may dismiss a prisoner's *in forma pauperis* claims as frivolous based on "medical or other prison records if they are adequately identified and authenticated.").

## II.  **Discussion**

Lyons was arrested on a charge of promotion of prostitution by Lubbock Police Department (LPD) officers on September 17, 2014, at the Heritage Apartment complex in Lubbock, Texas.

Thereafter, Lyons waived his right to appear before a magistrate judge, his bail was set at $5,000, and he was detained at Lubbock County Detention Center (LCDC). On September 30, 2014, a grand jury in Lubbock County indicted Lyons on the charges of promoting prostitution under Section 43.03 of the Texas Penal Code, and compelling prostitution under Section 43.05 of the Texas Penal Code. The authenticated records show he was detained at LCDC until November 16, 2015, when the charges against him were dismissed and he was released pursuant to a bench order.

In his Amended Complaint, Lyons lists the following Defendants: (1) Lubbock County Sheriff's Department; (2) Lubbock County Sheriff Kelly Rowe; (3) LCDC Commander Chief Scott; (4) LPD; (5) LPD Chief Stevens; (6) Lubbock County Private Defender's Office; and (7) unknown LCDC officers. In his responses to the court's questionnaire, Lyons also names several other Defendants, and seems to allege that all of the Defendants and their actions are connected through a conspiracy.[1] Lyons asserts numerous claims against these Defendants, and rather than reciting or summarizing his claims, the court simply addresses each below.

A.    **False Arrest**

To ultimately prevail on a § 1983 claim for false arrest, a plaintiff must show that the arresting officer did not have probable cause to arrest him. *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004) (citing *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001)). "Probable cause exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed

---

[1]Although the court issued the questionnaire in an attempt to clarify his claims, Lyons's responses to the questionnaire are mostly vague and many are unclear.

or was committing an offense.'" *Id.* at 655–56 (quoting *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001)).

Here, Lyons alleges he was falsely arrested on September 17, 2014, by officers from LPD. Authenticated records provided by the City of Lubbock show that on September 17, 2014, LPD officers conducted a prostitution sting operation targeting "Backpage," a known prostitution website. Specifically, an undercover LPD officer contacted a woman through a phone number listed on the website, and set up a meeting at the Heritage Apartment complex.  Upon arriving at the complex, the officer spoke to the woman (later identified as Lyons's girlfriend), who had the officer read a disclaimer that he recognized as a device sometimes used by prostitutes to try and avoid prosecution. After reading the statement, the woman then quoted two separate prices to the officer for sex, dependent on the act he preferred.  Believing he had probable cause to make an arrest for prostitution, the officer placed the woman under arrest and had her identify the apartment in which she lived. LPD officers then obtained both Lyons (who was in the apartment) and his girlfriend's consent to enter and search the apartment.

Officers searching the apartment found and confiscated condoms, a set of handcuffs, bondage restraints made from electrical cords that were tied to the bedframe, and $363 cash. Upon further questioning, Lyons's girlfriend told officers the following: (1) this was her first time to offer sex for money; (2) Lyons was her boyfriend, and that it was his idea for her to prostitute because they needed the money; (3) that she was pregnant with Lyons's baby; and (4) that Lyons had paid another female to post the ad for them on "Backpage." Based on the foregoing information and evidence found in the apartment, the officers believed they had probable cause to arrest Lyons on the charge

of promoting prostitution.  In his responses to the questionnaire on file herein, Lyons admitted that

he was arrested on the charge of promotion of prostitution at the Heritage Apartment complex.

Based on Lyons's responses to the questionnaire and the information in the authenticated

records, a reasonable person could conclude that Lyons had committed the offense for which he was

arrested.  Accordingly, Lyons has not sufficiently alleged a claim for false arrest and his claim should

be dismissed.

### B.      Seizure of Property

Lyons alleges that on the day he was arrested—September 17, 2014—LPD Officer Watley[2]

illegally seized and retained $380 and his wallet, which contained several of his identification and

bank cards.

To the extent Lyons alleges that Officer Watley seized his personal property in violation of

his constitutional rights, such claim should be dismissed.  The property was discovered after Lyons

consented to a search of the apartment and officers seized the items as evidence in connection with

Lyons's arrest, which was based on probable cause.  To the extent Lyons alleges that his property

was not returned, a state actor's negligence that results in an unintentional loss of property does not

amount to a constitutional claim.  *See Simmons v. Poppell*, 837 F.2d 1243, 1244 (5th Cir. 1988).

Similarly, an intentional deprivation of personal property does not amount to a constitutional claim

as long as the arrestee has an adequate state post-deprivation remedy.  *See Hudson v. Palmer*, 468

U.S. 517, 533 (1984).  The State of Texas has an adequate post-deprivation remedy—the filing of

a lawsuit for conversion in state court.  *See Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994).  If

---

[2]In his responses to the questionnaire, Lyons refers to an "Officer Watley."  The authenticated records show, however, that an Officer Wadkins and an Officer Hatley, among others, were involved in the sting operation.  Regardless, the name of the officer does not affect the court's analysis.

Officer Watley did in fact unlawfully retain Lyons's property as alleged, Lyons may have a cause of action for conversion in state court; however, he cannot pursue a constitutional claim in federal court.

Accordingly, Lyons's § 1983 claim that Officer Watley illegally seized and retained his wallet and $380 in violation of his constitutional rights is without merit and should be dismissed.

### C.   Failure to Protect from Assault

Lyons alleges that officers with the Lubbock County Sheriff's Department failed to protect him while he was detained at LCDC. He generally asserts that the officers failed to protect him from sexual and physical assaults by other officers and inmates. *See* Questionnaire, 5–6. Although his allegations are not entirely clear, he appears to claim that LCDC officers permitted inmates to enter his cell at night, and the officers and inmates sexually and physically assaulted him from October 2014 through January 2015. Lyons was a pre-trial detainee at the time of the incidents upon which he bases this claim.

In the Fifth Circuit, "the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement." *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996). Thus, regardless of whether the plaintiff is a pre-trial detainee or a convicted prisoner, the standard of liability is the same. *Id.*

Under the Eighth Amendment, prison officials have a duty to protect inmates from violence perpetrated by other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Horton v. Cockrell*, 70 F.3d 397, 400–02 (5th Cir. 1995). To prevail on a failure to protect claim, a prisoner must show that "he was incarcerated under conditions posing a substantial risk of serious harm and that prison

6

officials were deliberately indifferent to his need for protection." *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999) (quoting *Newton v. Black*, 133 F.3d 301, 308 (5th Cir. 1998)). A prison official is deliberately indifferent to a prisoner's safety where the official is aware of a substantial risk of harm to the prisoner but disregards that risk by failing to take reasonable measures to abate it. *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002) (citing *Farmer*, 511 U.S. at 847).

Although Lyons has generally alleged that LCDC officers failed to protect him from assaults by other LCDC officers and inmates, he has not identified any specific occasion(s) on which the Defendants ignored a known risk of harm to him. To the contrary, the authenticated records show that when he reported a potential risk of harm, LCDC officials responded and took measures to abate the risk. On September 26, 2014, soon after arriving at LCDC, Lyons reported that he felt in fear for his life because the charges against him had been reported in the newspaper. In response, LCDC officials placed Lyons in protective custody in a single cell, where he remained for a majority of the time he was detained.

Thereafter, the authenticated records show that Lyons filed numerous grievances related to his claim that he was assaulted by LCDC officers and inmates. The grievances make general allegations that certain LCDC guards and inmates were coming into his cell at night; however, the grievances do not contain specific information regarding dates of the alleged incidents, or names of the persons purportedly responsible. More importantly, the grievances contain no allegation that Lyons was actually sexually or physically assaulted. In response to several of the grievances, LCDC officials advised Lyons that he was already in protective custody in a single cell, and in response to others, Lyons was told that officials needed more information, such as names and dates, to properly investigate his claims. On January 27, 2015, Lieutenant Mull further advised Lyons that his

complaint was being investigated. LCDC officials eventually concluded that the complaint had no

credible basis. The records show that while LCDC officials did not take action on most of Lyons's

grievances, they did review them and subsequently took no action due to the lack of information or

the unsubstantiated nature of his claims.

Similarly, Lyons asserted in his responses to the questionnaire that "all officers that are male"

sexually assaulted him and "three Reyes officers and all male" physically assaulted him from

October 2014 through January 2015. He alleges that all LCDC officers, including Lieutenant Mull

and Chief Howell, failed to protect him from the assault. Other than this general allegation,

however, Lyons does not identify specific individuals that he believes failed to protect him, or facts

known to the officers that would require them to take reasonable measures to avoid the harm.

Lyons's allegations are insufficient to establish that LCDC officials were deliberately indifferent to

a known risk of serious harm.

Equally important is the fact that Lyons has failed to assert physical injury resulting from the

alleged assaults. Instead, he claims mental and emotional distress as a result. The authenticated

records do not show that he ever submitted a request to be examined by the LCDC medical

department with respect to his claims of physical or sexual assault. Without an allegation of physical

harm, Lyons has failed to state a § 1983 claim for failure to protect. *See Geiger v. Jowers*, 404 F.3d

371, 374 (5th Cir. 2005).

In sum, Lyons has not asserted a claim for failure to protect. The facts Lyons asserted and the

authenticated records do not establish that LCDC officials were deliberately indifferent to Lyons's

need for protection. Lyons has not shown that he informed LCDC officials of a specific threat of

serious harm that LCDC officials knowingly disregarded, or that resulted in physical harm. Accordingly, his claim that LCDC officials failed to protect him from October 2014 through January 2015 should be dismissed.

### D.    Denial of Food

Lyons alleges that he was denied adequate food from August 2015 until his release from LCDC on November 15, 2015. Specifically, he claims that his food was poisoned. He also asserts that LCDC officials would at times "skip" him and say that he had already received his food. As a result, Lyons alleges that he lost "a lot" of weight. Lyons does not name specific LCDC officials that he claims poisoned his food or who failed to provide him meals at chow time; he simply alleges that the Lubbock County Sheriff's Department as an organization denied him adequate food.

Under the Eighth Amendment, prisons have a duty to provide for the basic human needs of inmates by furnishing adequate food, clothing, shelter, medical care, and a safe environment.[3] *See Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996). Prisons are required to serve well-balanced meals containing sufficient nutritional value to sustain health. *See, e.g., Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999). Meals need not, however, be elaborate or satisfying. *See George v. King*, 837 F.2d 705, 707 (5th Cir. 1988). Deprivation of food amounts to cruel and unusual punishment only when an inmate is denied "the minimal civilized measure of life's necessities." *See*

---

[3]Lyons was a pre-trial detainee at the time of his allegations. The constitutional rights of a pre-trial detainee arise from the due process guarantees of the Fourteenth Amendment, which protect individuals from abusive government conduct. *See Hare*, 74 F.3d at 639. A pre-trial detainee's rights are "at least as great as the Eighth Amendment protections available to a convicted prisoner." *Id.* The court will therefore apply the Eighth Amendment standard to Lyons's claim for food deprivation.

*Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

Whether denial of food establishes a constitutional violation depends upon the amount and duration

of the alleged deprivation; in general, only a "continuous and substantial denial of food" will suffice.

*Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998). In regard to Lyons's poisoning claim, only

where prisoners "regularly and frequently suffer from food poisoning with truly serious medical

complications," and authorities without arguable justification refuse to attempt remedial measures

addressing known unsanitary practices, can the requisite deliberate indifference possibly be inferred

for an Eighth Amendment violation. *George*, 837 F.2d at 707.

Based on the facts alleged, Lyons has failed to state an Eighth Amendment claim for

deprivation of food. First, Lyons does not name an individual or group of LCDC officers that

poisoned or otherwise denied him adequate food, other than generally naming the Lubbock County

Sheriff's Department as a whole. Second, Lyons's allegations are general and do not describe

whether he was denied all meals or only certain meals. The authenticated records show that he filed

several grievances related to his belief that his food was poisoned or that he did not receive certain

meals. However, LCDC officials were often unable to investigate his complaints because Lyons did

not provide details regarding the allegations. LCDC officials advised Lyons to submit a request to

be seen by the medical department if he had concerns about his health and weight because of the

food. The records do not show Lyons sought medical treatment for his health or weight, and he does

not allege he did so. In several of the grievances that Lyons filed he stated he was receiving food;

however, he believed it was poisoned and demanded he receive sack meals instead. Thus, the

10

grievances do not indicate that Lyons was completely denied food but rather that he refused to eat it and requested a special meal.

Although Lyons generally alleges that he believes LCDC officials were poisoning his food and that they failed to provide him adequate food, he has not alleged sufficient facts to show a continuous or substantial denial of food amounting to a denial of the minimal measure of life's necessities. *See Talib*, 138 F.3d at 214 n.3. Similarly, he alleges no facts showing intentional or deliberately indifferent conduct on the part of any LCDC official concerning the alleged poisoning of his food, or "truly serious medical complications" as a result. Accordingly, Lyons's claim that he was denied adequate food in violation of his constitutional rights should be dismissed.

### E.    Deliberate Indifference to Serious Medical Needs

To establish a claim for deliberate indifference to serious medical needs, a pre-trial detainee must show that a prison official knew of and disregarded an excessive risk of harm to his health or safety. *Gibbs v. Grimmette*, 254 F.3d 545, 548–49 (5th Cir. 2001) (explaining that the rights of pre-trial detainees and convicted prisoners is the same with respect to basic human needs such as medical care). "Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos*, 41 F.3d at 235. Indeed, to make a showing of deliberate indifference the prisoner must "submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001)) (internal quotations omitted). Absent exceptional circumstances, a

11

prisoner's disagreement with medical treatment does not state a claim for deliberate indifference to medical needs under the Eighth Amendment. *See Gobert*, 463 F.3d at 346; *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

Here, Lyons asserts that unnamed LCDC officials did not provide him with a face cream from November 2014 until he was released, which resulted in his face becoming swollen. The authenticated medical records show that Lyons first requested medical treatment for an itchy spot on his face in June 2015. On June 7, 2015, the LCDC medical department prescribed him one tube of hydrocortisone cream to keep on his person. On August 2, 2015, the prescription for hydrocortisone cream was refilled.

The authenticated records show that Lyons was also treated for various other rashes and medical conditions during his detention at LCDC. For example, Lyons complained of a toothache and a swollen face in October 2014; he was evaluated and treated for his toothache on October 20, 2014. He also complained of an ingrown hair on his jaw in October 2014. He was counseled on proper hygiene and advised to place a warm compress on the ingrown hair three times daily, but his request for antibiotics related to the ingrown hair was denied. In February 2015, Lyons submitted a sick call related to a rash on his hand. He was evaluated by the LCDC medical department and prescribed one tube of hydrocortisone cream to apply to his hand as needed. In November 2015, the prescription for hydrocortisone cream was refilled to treat the rash on Lyons's hand in response to a sick call that he submitted.

Lyons has failed to show that the LCDC medical staff failed to treat him or intentionally treated him incorrectly. *See Gobert*, 463 F.23d at 346. Rather, the records show that the medical

staff responded to his sick call requests in a timely and appropriate manner. Even if there were lapses in between the time Lyons ran out of cream, and the time the LCDC medical staff refilled his prescription, the delays alleged herein do not violate the Eighth Amendment. *See Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993) (holding that a delay in treatment violates the Eighth Amendment only if the defendants are deliberately indifferent to a serious medical need and their indifference results in substantial harm). Moreover, Lyons has also failed to show that he has suffered any substantial harm as a result of the Defendants' alleged deliberate indifference. *See Berry v. Brady*, 192 F.3d 507–09 (5th Cir. 1999); *Mendoza*, 989 F.2d at 195.

Accordingly, Lyons has failed to state a claim for deliberate indifference to his medical care, and his claim should be dismissed.

### F.      Illegal Detention and Right to Speedy Trial

Lyons was arrested on a charge of promotion of prostitution on September 17, 2014. Reading his claim liberally, he asserts that he was "illegally incarcerated," or wrongfully detained, thereafter for one year and two months because the charge of promotion of prostitution against him was eventually dismissed. Lyons asserts this claim primarily against Lubbock County Sheriff's Department Chief Kelly Rowe, but also alleges that numerous other people were involved in the wrongful detention, including: LPD Chief, Assistant Chief, and Officer Watley; the Lubbock County District Attorney and judge; Phillip Wischkaemper, an attorney with the Lubbock Private Defender's Office; and, Lyons's court-appointed attorney, Jeff Nicholson. He also alleges that he was denied the right to a speedy trial by the Lubbock Private Defender's Office.

To the extent Lyons tries to allege a claim of wrongful detention under § 1983, he fails to do so. As discussed above, the court has already concluded that LPD officers had probable cause to arrest Lyons. Further, the authenticated records show that Lyons waived an initial appearance before a magistrate judge on September 18; thereafter, a magistrate judge entered a detention order and set bail at $5,000. On November 16, 2015, a Lubbock County judge entered a bench order dismissing the charge against Lyons, and LCDC released him the same day. Lyons does not allege, and the authenticated records do not indicate, that the Defendants he names were aware of any facts entitling him to release, or knowingly disregarded the same. Without more, the mere fact that the government eventually dismissed the charge for which Lyons was detained does not amount to a wrongful detention in violation of his constitutional rights. *See Simmons v. McElveen*, 846 F.2d 337, 399 (5th Cir. 1988) (finding that pre-trial detainee, held for eight months on a bank robbery charge eventually dismissed by authorities, failed to state § 1983 claim for false imprisonment where investigation by police and sheriff's office, while not "conducted as efficiently or expeditiously as possible," did not exceed negligence standard and thereby failed to state a claim of constitutional dimension).

To the extent Lyons is challenging the Lubbock County criminal proceedings against him, he should have filed a habeas petition while detained at LCDC. *See Dunn v. Prince*, 327 F. App'x 452, 454 (5th Cir. 2009) (citing *Dickerson v. Louisiana*, 816 F.2d 220, 223–24 (5th Cir. 1987)). As to his speedy trial claim, any such claim must first be raised in the state trial court by filing a motion,

"and then by petition for writ of mandamus in the Texas Court of Criminal Appeals."[4] *Rayford v. Dallas Cty. Sheriff's Dep't*, Civ. Action No. 3:14-CV-486-L, 2014 WL 1318447, at *2 (N.D. Tex. March 28, 2014) (citing *Chapman v. Evans*, 744 S.W.2d 133, 135–38 (Tex. Crim. App. 1988)). "The only remedy for a violation of the Sixth Amendment right to a speedy trial is dismissal of any criminal charges." *Quinn v. Roach*, 326 F. App'x 280, 290 (5th Cir. 2009). Here, the authenticated records show that the criminal charges against Lyons were dismissed, and he was released from LCDC in November 2015.

Accordingly, Lyons has failed to assert a constitutional claim for illegal detention or right to a speedy trial, and his claims should be dismissed.

## G.    Access to Courts

Lyons asserts that he was denied a right of access to the courts because LCDC Chief Howell and Lubbock County Sheriff Kelly Rowe did not permit him to receive legal mail and denied him access to legal counsel. To the extent Lyons alleges that he was denied a right of access to the courts with respect to his state criminal case, he has failed to state a claim. Lyons was represented by legal counsel at the time of his detention. To the extent Lyons asserts that he was denied a right of access to the courts in order to prosecute the instant federal civil rights case, he has failed to state a claim. A prisoner has the right to "adequate, effective, and meaningful" access to the courts. *Bounds v.*

---

[4]Lyons asserts that Phillip Wischkaemper with the Lubbock County Private Defender's Office denied his request for a speedy trial. However, Lyons did not sufficiently allege that Phillip Wischkaemper, as an attorney with the Lubbock County Private Defender's Office, had any personal involvement in the denial of his right to a speedy trial. In suits alleging individual capacity claims, a plaintiff "must demonstrate that each defendant was personally involved in a deprivation of his constitutional rights because '[p]ersonal involvement is an essential element of a civil rights cause of action.'" *Hines v. Graham*, 320 F. Supp. 2d 511, 518 (N.D. Tex. 2004) (citation omitted).

*Smith*, 430 U.S. 817, 822 (1977); *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). However, a prisoner's right to access the courts "encompasses only 'a reasonably adequate opportunity to file non frivolous legal claims challenging their convictions or conditions of confinement." *Johnson*, 110 F.3d at 310–11 (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)).

In his responses to the questionnaire, Lyons stated that he was prevented from receiving all of his legal mail. Lyons, however, filed his civil rights complaint on August 25, 2015, and the docket reflects that he responded to the court's orders and was able to file documents during that time. *See* ECF Nos. 5, 10, 11, 12, 14. Even assuming that LCDC officials withheld Lyons's legal mail, he has failed to show how the alleged confiscation "actually prejudiced his ability to pursue a legal claim." *Lann v. Cockrell*, 173 F. App'x 319, 320 (5th Cir. 2006); *Sun v. United States*, 1995 WL 103351, 49 F.3d 728, at *6 (5th Cir. 1995) (holding that the deprivation of legal materials does not amount to a constitutional violation where the prisoner does not suffer any prejudice as a result of the deprivation). Lyons also stated in his responses to the questionnaire that he was granted access to the law library three or four times during his detention. His pleadings in this case were sufficient to present his claims to this court, and he has not shown that his position as a litigant was prejudiced.

Accordingly, Lyons's claim that he was denied a right of access to the courts should be dismissed.

## H.   Supervisory Liability

Through his Amended Complaint, Lyons brought this action against Lubbock County Sheriff Kelly Rowe, LCDC Commander Chief Scott, and LPD Chief of Police Greg Stevens, among others.

He does not allege, however, that these Defendants were personally involved in an act that resulted in a deprivation of his constitutional rights nor does he allege that they implemented a policy that resulted in a constitutional injury. Rather, Lyons merely makes conclusory allegations that these Defendants are responsible for constitutional injuries against him because of their roles as supervisors under a theory of *respondeat superior*. Accordingly, Lyons's claims against Lubbock County Sheriff Kelly Rowe, LCDC Commander Chief Scott, and LPD Chief of Police Greg Stevens based on supervisory liability should be dismissed for this reason alone, notwithstanding his failure to assert a constitutional violation. *See Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Gates v. Tex. Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)).

I.    **Claims Against Lubbock County Judge, District Attorney, and Attorney Jeff Nicholson**

In the responses to his questionnaire, Lyons names several other Defendants: (1) the Lubbock County judge assigned to his criminal case, whom Lyons does not specifically name; (2) the Lubbock County district attorney; and (3) his court-appointed attorney, Jeff Nicholson.

Lyons's claims against a Lubbock County judge must be dismissed because a judge cannot be held liable for monetary damages under § 1983. A judicial officer is absolutely immune from suit, and Lyons has pled no facts even attempting to circumvent such immunity. *See Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005) (citing *Mireles v. Waco*, 502 U.S. 9, 10–11 (1991)). Likewise, Lyons has not stated a claim against the Lubbock County district attorney. As discussed above, he has failed to establish a violation of his constitutional rights. Even if he had stated a § 1983 claim, prosecutors also enjoy absolute immunity in pursuing criminal prosecutions. *See Imbler v.*

*Pachtman*, 424 U.S. 409, 430–31 (1976). Lyons has not alleged that the district attorney acted in any role other than as a prosecutor.

Finally, Lyons has failed to assert a constitutional claim against his court-appointed attorney, Jeff Nicholson. In general, private attorneys, including court-appointed attorneys, are not state actors within the meaning of § 1983. *See West v. Atkins*, 487 U.S. 42, 49 (1988); *Mills v. Criminal Dist. Court No. 3*, 837 F.2d 677, 679 (5th Cir. 1988). However, a private person may be liable under § 1983 if he conspired with the state or its agents—as Lyons seems to allege here. *See Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994). But other than his conclusory allegation that Jeff Nicholson conspired with the Lubbock County judge and district attorney, Lyons has not alleged sufficient facts to establish a conspiracy.

Accordingly, all of Lyons's claims against the Lubbock County judge, Lubbock County district attorney, and his court-appointed attorney Jeff Nicholson should be dismissed for failure to state a claim.

### J.    "Clearly Baseless" Factual Contentions

In the alternative, and in addition to the court's discussion above, the court also notes that based on a review of the authenticated records and his own allegations, many of Lyons's claims are "clearly baseless" factual contentions. *Denton v. Hernandez*, 504 U.S. 25, 32 (1992). A plaintiff's factual allegations that are "fanciful, irrational, incredible, and delusional" may be dismissed by the court as manifestly frivolous. *Simmons v. Payne*, 170 F. App'x 906, 907 (5th Cir. 2006). Many of Lyons's claims stem from his allegation that the Defendants "all are in the same bed" and they have all conspired against him. Other than Lyons's conclusory allegations, however, he has not made a

showing that the Defendants are involved in a conspiracy to harm him. Notwithstanding the court's analysis of Lyons's constitutional claims above, his claims should also be dismissed as factually frivolous.

## III.   Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Court dismiss Lyons's Amended Complaint and all claims therein with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

## IV.   Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: August 2̶2̶, 2016

**D. GORDON BRYANT, JR.**
**UNITED STATES MAGISTRATE JUDGE**